U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 2 6 2016

TONY R. MOORE, CLERK
BY: _____
DEPUTY

b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| STANLEY EDWARD JAMISON | CIVIL ACTION NO. 1:15-CV-01678<br>SECTION "P" |
| VERSUS | JUDGE TRIMBLE |
| UNITED STATES OF AMERICA, et al. | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

I.     Background

Before the Court is a complaint filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), on May 11, 2015 by Plaintiff Stanley Edward Jamison ("Jamison").  The only defendant in the FTCA action is the United States of America ("USA").  The named defendants in the Bivens action are M.D. Carvajal (former warden of the United States Penitentiary in Pollock, Louisiana ("USP-Pollock")); Officer Leckie (a correctional officer at USP-Pollock); Bobby Crawford (a Special Investigative Supervisor at USP-Pollock); Mrs. L. Dodd-Winfield (a case manager at USP-Pollock; D. Willis (a Special Investigative Supervisor at USP-Pollock); F. Frazier (a unit manager at USP-Pollock); Dr. Masessa (a psychologist); Lt. B. Ventura; and Operations Lt. Phillips, all employees of the BOP at USP-Pollock.[1]

_____

[1] Jamison's claims against the defendants in their official capacities were dismissed (Doc. 22).

1

Jamison contends that, while he was incarcerated in USP-Pollock on February 14, 2014, Officer Leckie sexually assaulted him under the pretext of a pat down search. Jamison contends the battery was videoed (Doc. 1). Jamison also complains that Warden Carvajal, Dr. Masessa, SIS Bobby Crawford, SIS Willis, Lt. Ventura, and Lt. Phillips locked him in the Special Housing Unit ("SHU") for 90 days, beginning on February 15, 2014, in retaliation for him reporting the sexual assault to the Inspector General. Jamison contends he was released from the SHU on May 21, 2014, when he was transferred to another prison.

Jamison seeks a jury trial, monetary damages (including punitive damages), and a declaratory judgment. Jamison is presently incarcerated in the United States Penitentiary in Allentown, Pennsylvania.

Defendants answered the complaint (Doc. 27) and filed a motion for summary judgment (Doc. 40) with affidavits, depositions, and documentary exhibits (Docs. 38, 41). Jamison has not opposed or responded to Defendants' motion.

## II.   Law and Analysis

### A.   Standards governing the Motion for Summary Judgment generally.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>     (1) give an opportunity to properly support or address the fact;

>(2) consider the fact undisputed for purposes of the motion;
>(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>(4) issue any other appropriate order.[2]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant.  See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010).  However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

## B.    The summary judgment evidence.

In Officer A. Leckie's affidavit, Defendants show the metal detector alerted when Jamison walked through it, so Leckie pat searched Jamison.  Leckie stated he felt something in Jamison's left front pants pocket, removed objects from his pocket, and then asked Jamison if he had anything else in his pockets (Doc. 40-3).  Leckie states that Jamison also removed a metal clip and papers from his pocket (Doc. 40-3).  Leckie inspected the items, and then let Jamison continue on his way (Doc. 40-3).  Leckie stated he did not fondle Jamison's genitals and did not intend to humiliate him (Doc. 40-3).

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

In SIS D. Willis's affidavit, Defendants show that, in the course of his PREA ("Prison Rape Elimination Act") investigation of Jamison's sexual assault complaint, Leckie said he did not want Jamison back in the institution yard because Jamison had made false allegations against him (Doc. 40-4).  Willis stated that, since Leckie had been cleared of any misconduct, he no longer felt safe with Jamison in the yard (Doc. 40-4).  Willis found that, due to animosity between Leckie and Jamison, there would be undue distress to Leckie if Jamison returned to general population, and the animosity would create an unsafe environment for everyone at USP-Pollock (Doc. 40-4).  Willis determined that Jamison's presence was a threat to the safety, security, and orderly running of the institution, and recommended that Jamison be transferred (Doc. 40-4).  Willis further states he did not have a retaliatory motive for recommending that Jamison be transferred, and did not take Leckie's word over Jamison's (Doc. 40-4).  Willis did not place Jamison in the SHU, and did not have the authority to do so (Doc. 40-4).

An affidavit from SIS Lt. B.R. Crawford shows he also conducted a PREA investigation of Jamison's complaint against Officer Leckie (Doc. 40-5).  Crawford states he concluded that Leckie did not sexually assault Jamison, but was instead performing routine duties to ensure inmates clearing the metal detector were randomly pat-searched (Doc. 40-5).  Crawford further states he directed Willis to complete a threat assessment on Jamison (Doc. 40-5).  Crawford agreed with Willis's finding that Jamison is a threat and his recommendation to transfer Jamison to another BOP institution (Doc. 40-5).  Crawford states that Jamison was placed in the

4

SHU by Lt. Ventura to protect both Jamison and Leckie during the SIS investigation, since Jamison alleged that Leckie had engaged in sexually abusive behavior (Doc. 40-5).   Crawford states Jamison was not placed in the SHU in retaliation for his complaint (Doc. 40-5).

Lt. B. Ventura stated in an affidavit (Doc. 40-6) that he did not place Jamison in the SHU in retaliation for filing a PREA complaint, but instead followed BOP policy of separating the inmate from the staff member he accused of sexual misconduct.

Lt. W. Phillips stated in an affidavit (Doc. 40-7) that he was not involved in placing Jamison in the SHU.

Warden Carvajal stated in his affidavit (Doc. 41-1) that he did not retaliate against Jamison for filing a PREA complaint by transferring him.  Warden Carvajal stated that Jamison was transferred because SIS recommended it due to the after-the-fact animosity between Jamison and the staff (Doc. 41-1).  Warden Carvajal further stated that, although he signed the request for transfer, it had to be reviewed and approved by the BOP's Designation and Sentence Computation Center ("DSCC") before the transfer could be made (Doc. 41-1).

Dr. G.M. Masessa stated in her affidavit that she was a staff psychologist at USP-Pollock, and that she did not retaliate against Jamison for failing a grievance against Officer Leckie by having Jamison placed in the SHU (Doc. 41-2). Dr. Masessa further stated that she does not have the authority to place an inmate in the SHU, or

to release an inmate from the SHU (Doc. 41-2).   Dr. Masessa interviewed and counseled Jamison while he was in the SHU (Doc. 41-2).

R. Frazier, the former Unit Manager at USP-Pollock, stated in his affidavit (Doc. 41-3) that he did not retaliate against Jamison for filing a grievance against Officer Leckie by having Jamison transferred to another institution.  Frazier stated that, when SIS's recommendation for a transfer was communicated, he instructed the case manager to prepare a request for transfer/application of management variable ("RTAMV") for the warden's consideration (Doc. 41-3).  Frazier signed and routed the RTAMV for further review (Doc. 41-3).  Frazier stated that no one at institution level has the authority to transfer an inmate, because DSCC has to authorize a transfer (Doc. 41-3).

Case manager L. Dodd-Winnfield stated in her affidavit that she did not retaliate against Jamison by signing a request for transfer order (Doc. 41-4).  Dodd-Winnfield stated that, on the unit manager's request, she prepared an RTAMV for the warden's consideration, (Doc. 41-4).  Dodd-Winnfield stated that she did not have any authority to transfer an inmate (Doc. 41-4).

Defendants also submitted the video of Jamison's pat-search (Doc. 38).  The video shows the metal detector went off when Jamison walked through it and Leckie motioned for Jamison to step to the side.  The video clearly shows a very brief pat-search.  Leckie obviously felt something in Jamison's left pants pocket and quickly retrieved it.  Leckie inspected the objects from Jamison's pockets, then returned them

6

to him, and Jamison went on his way.  There was another guard present during the pat-search.

In his deposition, Jamison identified the portion of the video (attached to Doc. 38) during which the alleged groping took place, at 6:22:22 to 6:22:30 (Doc. 38, p. 94/115).  Jamison stated that it is BOP policy for a pat-search to be of outer clothing only, and that officers are not allowed to put their hands in inmates' pockets (Doc. 38, p. 34/115).  Jamison believes a pat-search is conducted at an officer's discretion (Doc. 38, p. 36/115).  Jamison has undergone approximately one pat-search per day since he was incarcerated in 1982 (Doc. 38, p. 37/115).

Jamison said the metal detector did not go off when he walked through it, but Leckie pat-searched him anyway (Doc. 38, pp. 78-79/115).  Jamison stated that, when Leckie placed his hand in Jamison's pocket during the pat-search, Jamison told him he is not allowed to do that him (Doc. 38, p. 74/115).  In response, Leckie shoved his hand further into Jamison's pocket and fondled him (Doc. 38, p. 74/115).  Jamison described the fondling as a two to three second touching of his genitals with the upper two joints of his four fingers (Doc. 38, pp. 79-82/115).  Jamison admitted that Leckie removed some "gambling paraphernalia" (tickets) from his pocket (Doc. 38, pp. 85-86/115).  Jamison did not observe any signs that Leckie groped him for sexual gratification (Doc. 38, pp. 86-88/115).  Instead, Jamison said he thought Leckie did it to humiliate him, but admitted that Leckie did not say anything to him that would make him think so (Doc. 38, pp. 89-90/115).

After the incident, Jamison did not seek treatment for emotional distress (Doc. 38, p. 96/115).  Jamison also explained that the entire institution went on lockdown soon after the incident (for an unrelated reason), so Jamison refused to talk to Dr. Masessa until the lockdown was over (Doc. 38, pp. 98-99/115).  Jamison stated that, when the institution is on lockdown, the environment becomes hostile and people are upset, and he did not want anyone to think he was "ratting" on someone by talking to Dr. Masessa (Doc. 38, p. 100/115).

Jamison acknowledged in his deposition that an inmate could be placed in the SHU when the SIS investigates an incident, and that it would not be retaliatory (Doc 3l8, p. 44/115).  Jamison also stated that inmates are placed in the SHU for non-retaliatory reasons such as to protect inmate or staff safety or pending a threat assessment (Doc. 38, pp. 46-47/115).

Jamison stated in his deposition that he met Leckie about a month before the incident and had not really interacted with him (Doc. 38, pp. 50-51/115).  Before the incident, Jamison had never interacted with Dr. Masessa, Lt. Ventura, or SIS Willis; he had only limited interaction with Lt. Phillips; and he had interacted some with Dodd-Winnfield because she was his case manager (Doc. 38, pp. 51-/115).  Jamison stated the reason he sued Defendants (other than Leckie) is because he believed they all were all involved in having him being placed in the SHU and transferred out of USP-Pollock, and that their motive was retaliatory (Doc. 38, pp. 55-73/115).  Jamison said he based his conclusion that the transfer was retaliatory on Warden Carvajal's, Dr. Masessa's, and Bobby Crawford's statements and reports (Doc. 38, p. 106/115).

Jamison agreed, however, that an inmate could be transferred to another facility for any reason or no reason at all, and that certain actions could have legal consequences without a retaliatory motive (Doc. 38, pp. 108-109/115).

Jamison said that he tried to put the incident with Leckie in the proper perspective, and decided to write a complaint instead of lashing out (Doc. 38, p. 103/115). Jamison handled his mental distress with meditation, writing, and exercise (Doc. 38, p. 105/115).

### C. Defendants' Motion for Summary Judgment should be granted as to Jamison's FTCA claim against the United States.

#### 1. The Court has subject matter jurisdiction over Jamison's FTCA claim.

The FTCA waives the United States's sovereign immunity for the torts of federal employees by granting the federal district courts jurisdiction over suits for damages "caused by the negligent or wrongful act or omission of any employee of the Government. . . ." The FTCA also limits the United States's liability in certain respects. See Aretz v. United States of America, 604 F.2d 417, 426 (5th Cir. 1979), on rehearing, 635 F.2d 485 (5th Cir. 1981); see also 28 U.S.C. § 1346(b). Under the FTCA, the United States may be liable if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. See Longino v. U.S. Dept. of Agric., 912 F.Supp.2d 424, 429 (W.D. La. 2012) (citing United States v. Olson, 546 U.S. 43, 44 (2005)); see also 28 U.S.C. §§ 1346(b)(1), 2674.

There are exceptions to the waiver of sovereign immunity in the FTCA. See 28 U.S.C. § 2680(a)-(n). One of the exceptions to the FTCA's general consent-to-be-sued

policy retains the government's sovereign immunity for any claim arising out of assault or battery. See 28 U.S.C. §2680(h); Truman v. U.S., 26 F.3d 592, 594 (5th Cir. 1994). However, the intentional tort exception to the waiver of sovereign immunity set forth in 28 U.S.C. § 2680(h) is limited by the "law enforcement proviso," which relinquishes sovereign immunity against claims arising out of torts enumerated in Section 2680(h) (including assault and battery) if the claim resulted from the act or omission of a federal investigative or law enforcement officer. See Sutton v. U.S., 819 F.2d 1289 (5th Cir. 1987); see also Millbrook v. United States, 133 S.Ct. 1441, 1446 (U.S. 2013). BOP employees are considered law enforcement officers for purposes of Section 2680(h). Millbrook, 133 S.Ct. at 1445 n.3. Therefore, this Court has subject matter jurisdiction.

### 2. Jamison has not stated a viable claim for a "sexual act" as defined in the FTCA.

The United States does not argue that the Court lacks jurisdiction in this case. Instead, the United States contends Jamison failed to establish a prima facie case of all of the elements of sexual battery.

Generally, when a federal court has jurisdiction to hear an FTCA claim, the law of the state in which the alleged negligent act or omission occurs is the law that is applied. See Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008). However, to be actionable under the FTCA, the conduct complained of by a convicted felon must result in a physical injury or constitute a "sexual act" as defined by 18 U.S.C. §

2246(2).  See 28 U.S.C. § 1346(b)(2).[3]  Jamison has not alleged a physical injury that resulted from the incident.  Jamison contends only that he was "sexually assaulted."

In § 2246, a "sexual act" is defined as: (1) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.[4]

Jamison alleges only that Leckie touched his genitals *through his clothing* while he conducted a pat search.  The FTCA makes clear that the conduct about which Jamison complains is not a "sexual act" that falls within the scope of conduct covered by the FTCA.  See Turner v. U.S., 2013 WL 6813902, *2 (E.D. Ky. 2013).

---

[3] 28 U.S.C.A. § 1346(2) states:
(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

[4] "Sexual contact" is defined in 18 U.S.C.A. § 2246(3) to mean "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

A statute's plain meaning must be enforced. <u>U.S. Nat. Bank of Oregon v.</u> <u>Independent Ins. Agents of America, Inc.,</u> 508 U.S. 439 (1993) (citing <u>NLRB v.</u> <u>Federbush Co.,</u> 121 F.2d 954, 957 (2d Cir. 1941); <u>see also</u> A. Scalia & B.A. Garner, <u>Reading Law</u>, pp. 56-58, 140, 397-98 (1st ed. 2012). The definition of the term "sexual act" contained in § 2246(2) is unambiguous. Whatever policies may underlie that definition – and its demarcations between the terms "sexual act" and "sexual contact" – the definition reflects a clear legislative choice to specifically exclude contact through clothing from the term "sexual act." In this case, therefore, no "sexual act" occurred. And in equally unambiguous statutory language, the United States declined to waive immunity under the FTCA for "sexual contact," even assuming "sexual contact" occurred.

There is no genuine issue of material fact as to whether a sexual act was committed. The evidence clearly shows no sexual act was committed since any contact was through clothing.[5] Jamison has not stated a claim against the United States that is cognizable under the FTCA, and there are no genuine issues of material fact that would preclude a summary judgment. Therefore, Defendants' motion for summary judgment should be granted in favor of the United States on Jamison's FTCA claim.

---

[5] There is also no genuine issue of material fact as to whether "sexual contact" was committed, as defined in 18 U.S.C. § 2246(2). There is no evidence that Leckie intended to touch Jamison's genitals when he reached into Jamison's pocket to retrieve the objects that set off the metal detector. Moreover, Jamison admits Leckie did not touch him for sexual gratification, and there is no evidence that Leckie intended to "abuse, humiliate, harass, [or] degrade" Jamison. Jamison admits Leckie did not say anything abusive to him. Whether or not reaching into Jamison's pocket was in accordance with BOP policy, as a matter of pragmatism, Jamison's claim of sexual assault is baseless and does not rise to the level of a federal tort.

**D.    Defendants' motion for summary judgment should be granted as to Jamison's Bivens claim.**

Jamison contends Defendants Carvajal, Leckie, Crawford, Dodd-Winfield, Willis, Frazier, Dr. Masessa, Ventura, and Phillips are liable to him pursuant to <u>Bivens</u>.  Jamison contends that being groped by Officer Leckie during a pat-down search, then placed in the SHU and ultimately transferred out of USP-Pollock, all in retaliation for complaining about being groped, violated his constitutional rights.

To state a claim under <u>Bivens</u>,[6] a plaintiff must (1) identify a right secured by federal law or the United States Constitution, and (2) demonstrate a deprivation of that right by a person acting under color of state law.  <u>See West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Hall v. Smith</u>, 497 Fed.Appx. 366, 375 (5th Cir. 2012), cert. den., 133 S.Ct. 1814 (U.S. 2013).

**1.    The pat-search did not violate Jamison's constitutional rights.**

Jamison contends Leckie sexually assaulted him on February 14, 2014. Jamison alleges the sexual assault occurred when Officer Leckie reached into his pocket and touched Jamison's genitals through his clothing during a pat-search.  The pat search was videotaped, and the videotape was placed in evidence (Doc. 41).

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Among unnecessary and wanton inflictions of pain are those that are totally without penological justification.  <u>Hope v.</u>

---

[6] A <u>Bivens</u> action is analogous to an action under § 1983, and the Fifth Circuit does not distinguish between <u>Bivens</u> and § 1983 claims.  <u>See Izen v. Catalina</u>, 393 F.3d 363, 367 n.3 (5th Cir. 2005).  The constitutional torts authorized by each are coextensive.  <u>Izen</u>, 398 F.3d at 367, n.3.

<u>Pelzer</u>, 536 U.S. 730, 737 (2002). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to liability to that prisoner. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Hare v. City of Corinth, Miss.</u>, 74 F.3d 633, 648 (5th Cir. 1996).

A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment. A single incident of abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct. <u>See</u> <u>Crawford v. Cuomo</u>, 796 F.3d 252, 257 (2d Cir. 2015);[7] <u>see also</u>, <u>Banks v. Rozum</u>, 639 Fed.Appx. 778, 782-83 (3d Cir. 2016) (two pat-down searches of inmate did not amount to sexual assaults in violation of the Eighth Amendment). Recurrence of abuse, while not a prerequisite for liability, bears on the question of severity.

---

[7] <u>Crawford</u> overrules in part <u>Boddie v. Schnieder</u>, 105 F.3d 857, 860-61 (2d Cir. 1997). In <u>Boddie</u>, the Second Circuit stated that sexual abuse of a prisoner by a corrections officer *may in some circumstances* violate the prisoner's right to be free from cruel and unusual punishment. The Court in <u>Boddie</u> held that isolated incidents of sexual harassment, where a prisoner was verbally harassed, touched, and pressed against by the corrections officer without consent, did not violate the Eighth Amendment. <u>Boddie</u> has been widely followed.

In <u>Crawford</u>, the Second Circuit recognized that <u>Boddie</u> is no longer in accord with community standards of decency, noting that Congress unanimously passed the Prison Rape Elimination Act, and that all but two states had criminalized "sexual contact" between inmates and corrections officers. <u>Crawford</u>, 796 F.3d at 259-60. "These laws and policies reflect the deep moral indignation that has replaced what had been society's passive acceptance of the problem of sexual abuse in prison. They make it clear that the sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment." <u>Crawford</u>, 796 F.3d at 260.

<u>Crawford</u>, 796 F.3d at 257. An officer's physical contact with an inmate's genitalia during a legitimate pat search may be incidental to legitimate official duties. <u>See</u> <u>Shaw v. Prindle</u>, __Fed.Appx.__, 2016 WL 4578630, *2 (2d Cir. 2016).

A discussed above, there is no evidence that Officer Leckie's pat-search of Jamison was motivated by sexual desire or the intent to humiliate Jamison. According to Defendants' affidavits, the pat-search was a legitimate search of an inmate who had passed through a metal detector. The video evidence shows the metal detector went off when Jamison passed through it. No other motive is apparent from the evidence, including the video of the pat-search (Doc. 41).

Moreover, given the brief length of the search, Leckie simply could not have made more than incidental, and brief, contact with Jamison's genitals during a justified pat-search. Such contact is not a constitutional violation.

Jamison has not stated a <u>Bivens</u> claim for sexual assault. Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted on this issue.

### 2. Jamison's placement in the SHU did not violate Jamison's constitutional rights.

Jamison contends the remaining Defendants locked him in the SHU for 90 days in retaliation for his complaint about the sexual assault. Jamison contends Dr. Masessa told him he was placed in the SHU because he filed a complaint.

To state a valid claim for retaliation under <u>Bivens</u>, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4)

causation. Hanna v. Maxwell, 415 Fed.Appx. 533, 535 (5th Cir. 2011), cert. den., 135 U.S. 01 (U.S. 2014) (citing Jones v. Greninger, 188 F.3d 322, 324–25 (5th Cir. 1999)). To establish causation, the plaintiff must show that, but for the retaliatory motive, the complained of incident would not have occurred. See Johnson v. Rodriguez, 119 F.3d 299, 310 (5th Cir. 1997) (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. den., 516 U.S. 1084 (1996). A prisoner must show more than a "personal belief that he is the victim of retaliation." See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir.1997), cert. den., 522 U.S. 995 (1997) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)).

Retaliation for the exercise of a constitutional right is actionable even if the act, when taken for different reasons, would have been proper. See Woods, 60 F.3d at 1165.   Prison officials are prohibited from retaliating against inmates who complain of prison conditions or official misconduct. A guard thus may not harass an inmate in retaliation for the inmate complaining to supervisors about the guard's conduct. See Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986), cert. den., 476 U.S. 1117 (1986); Ruiz v. Estelle, 679 F.2d 1115, 1154 (5th Cir.), modified on other grounds, 688 F.2d 266 (5th Cir. 1982), cert. den., 460 U.S. 1042 (1983).

Dr. Masessa's statement that Jamison was placed in the SHU because he filed a complaint was correct.  According to Defendants, Jamison was placed in the SHU pursuant to BOP policy in order to separate him, and protect him, from Leckie while his sexual assault complaint was investigated.  Defendants have shown Jamison was not placed in the SHU in retaliation for his complaint.

16

Jamison has not shown that, but for the alleged retaliatory motive, he would not have been placed in the SHU.  It was BOP policy to move any inmate who made a PREA complaint to the SHU, for the protection of both the inmate and the officer.  Therefore, Jamison has not carried his burden of proving Defendants retaliated against him by placing him in the SHU.

Jamison also complains about being left in the SHU for 90 days.  However, administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest.  See Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (citing Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995), cert. den., 517 U.S. 1196 (1996)).  A claim as to the amount of time spent in the SHU does not allege a due process violation.  See Lair v. Purdy, 84 Fed.Appx. 413, 415 (5th Cir. 2003); see also Colgrove v. Williams, 105 Fed.Appx. 537, 538 (5th Cir. 2004); Tamez v. Buentello, 80 Fed.Appx. 933, 934 (5th Cir. 2003); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998), cert. den., 527 U.S. 1041 (1999).

Since being placed in the SHU for 90 days does not state a claim for violation of a constitutional right, Defendants' motion should be granted on this issue and Jamison's claim should be dismissed.

### 3.   Transfer to another prison did not violate Jamison's constitutional rights.

Jamison further claims that SIS Willis wrote a report that stated his claim of sexual assault was unsubstantiated and cleared Leckie of misconduct, and also stated Jamison was a threat to the security of the prison.  Jamison contends Willis retaliated against him by writing his report in a manner that would result in Jamison being

17

transferred to another prison.  Jamison contends all of the Defendants (other than Leckie) had him transferred him to another institution in retaliation for his having filed a sexual assault grievance against Leckie (Doc. 1).

As discussed above, there is no evidence that Defendants had a retaliatory motive for transferring Jamison to another institution.  Jamison has not shown that, but for the alleged retaliatory motive, he would not have been transferred.  Jamison acknowledges that inmates can be transferred for any, or no, reason.  Also, those with final authority to transfer an inmate, the BOP's DSCC, do not work at USP-Pollock or any other prison, and could not have had a retaliatory motive for ordering Jamison's transfer.

Defendants show in their affidavits that Jamison was transferred because he made a PREA claim against Officer Leckie and Leckie was cleared of any misconduct, which resulted in animosity between Jamison and Leckie.  Due to that animosity, Jamison became a threat to the order and security of USP-Pollock, warranting his transfer.

Moreover, the Due Process clause of the Fourteenth Amendment does not endow a prisoner with a protected liberty interest in the location of his confinement. See Meachum v. Fano, 427 U.S. 215, 228 (1976); see also Taylor v. Carlize, 172 Fed. Appx. 589, *1, n.3 (2006).  A prisoner has no liberty interest or right to be housed in a particular facility.  See Siebert v. Chandler, 586 Fed.Appx. 188, 189 (5th Cir. 2014). The BOP has wide discretion in designating the place of a prisoner's imprisonment.

See Siebert, 586 Fed.Appx. at 189 (citing 18 U.S.C. § 3621(b)). Jamison does not have a constitutional right to be incarcerated in a particular prison.

Therefore, Defendants' motion for summary judgment should be granted on this issue.

## III.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion for summary judgment (Doc. 40) be GRANTED and that Jamison's FTCA and Bivens actions be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 26 day of September, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge